FILED
SUPERIOR COURT
OF GUAM

2020 OCT 15 PM 4: 51

CLERK OF COURT

BY:

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| EUGENE T. IGROS and AMY N. IGROS, on behalf of themselves and their minor children, E.N.I. and E.T.I., <br><br> Petitioners, <br><br> v. <br><br> DEPARTMENT OF PUBLIC HEALTH AND SOCIAL SERVICES <br><br> GOVERNMENT OF GUAM, <br><br> Respondents. | Special Proceedings Case No. <u>SP0127-20</u> <br><br><br> **DECISION AND ORDER RE EX PARTE MOTION FOR RECONSIDERATION** |

The Court here considers Respondents Department of Public Health and Social Services ("DPHSS") and the Government of Guam's *Ex Parte* Motion for Reconsideration of the September 12, 2020 Findings of Fact and Conclusions of Law ("FFCL"). Having considered the applicable law and relevant evidence, the Court DENIES Respondents' Motion.

## I.    PROCEDURAL HISTORY

Petitioners Eugene T. Igros and Amy N. Igros, on behalf of themselves and their minor children, E.N.I. and E.T.I., petitioned for a writ of habeas corpus. After hearing testimony and arguments, the Court issued its FFCL. Respondents now move the Court to reconsider its rulings regarding voluntary quarantine and attorney's fees. The Court limits this present Decision and Order to issues concerning the voluntariness of the Igroses' quarantine at a government facility.



## II.  LAW AND DISCUSSION

Respondents move the Court to reconsider its FFCL under Guam Rule of Civil Procedure 59(e).  Under Rule 59(e), reconsideration may be granted where the trial court committed clear error.  *Rong Chang Co., Ltd.* v. *M2P, Inc.*, 2012 Guam 1 ¶ 16.  Respondents argue four points: (1) the Court clearly erred in deciding the issue of voluntary quarantine *sua sponte*; (2) the Court clearly erred in ruling that the Igroses did not enter into voluntary quarantine; (3) criminal law caselaw should be considered in examining voluntariness; and (4) the Court has reversed its position on voluntary quarantine.  The Court examines each of these arguments.

### A.  Whether the Court sua sponte ruled on the government's general authority to obtain consent to voluntary quarantine.

Respondents contend that the Court ruled, *sua sponte*, that individuals may not consent to a government quarantine.  As an initial matter, Respondents misconstrue the Court's holding. The Court did not rule that Guam's isolation and quarantine regulations were invalid or implicitly repealed.  At the outset of its analysis, the Court recognized that the regulations permit the government to seek voluntary quarantine as a first option.  FFCL at 5 (Sept. 12, 2020). However, the FFCL then held that, based on the totality of the facts presented, the Igros family members were subject to a mandatory quarantine and that 10 GCA § 19605 is the applicable statute governing the particular quarantine.

Moreover, the record demonstrates that the Court did not act out of thin air or on its own volition.  *See Cristobal v. Siegel*, 2014 Guam 16 ¶ 25 ("The traditional definition of *sua sponte* is that the court acts of 'its own will or motion.'").  Respondents knew that the Igroses' lack of consent and the statutory authority applicable to their quarantine were both at issue.  The Igroses dwelled at length, in their Petition and at the hearing, on how DPHSS was required to comply with 10 GCA § 19605 in quarantining the Igros family.  V. Pet. ¶¶ 7-11, 15, 22 (Sept. 9, 2020).



The Igroses also specifically alleged that they were "forced . . . to sign a '[v]oluntary [q]uarantine' form for mandatory quarantine at a government facility. Petitioners' quarantine at a government facility is not voluntary." V. Pet. ¶ 19. Then, during closing arguments, the Court asked Respondents a series of questions about their procedures and compliance with Guam law. If Respondents believe they did not have an opportunity to brief the issue of voluntary consent or the applicable statute or regulations, it is because they ignored the Igroses' allegations of involuntariness at the inception of the quarantine and instead assumed their reliance on quarantine regulations was justified without presenting further facts or argument. Because the Igroses squarely placed the issues of consent and statutory authority before the Court, it did not err in entertaining those issues.

**B. Whether the Court committed a clear error of law.**

Respondents argue that the Court committed a clear error of law by not considering 10 GCA § 3309 and 26 GAR, Division 1, Chapter 10 (" Isolation and Quarantine Regulations" or "Regulations"). According to Respondents, section 3309 prompts and enables them to utilize the Isolation and Quarantine Regulations. Respondents further contend that the Regulations dictate the procedure for voluntary quarantine and that 10 GAR § 10104 provides for voluntary isolation "to always be used as a first option." Respondents maintain that DPHSS followed this procedure in offering the Igros family a voluntary quarantine form. After obtaining the Igroses' signatures on a voluntary quarantine form, DPHSS maintains that no further action was required so long as the consent was not revoked. For the foregoing reasons, the Court disagrees that it committed a clear error in determining that Title 10, Chapter 19 of the Guam Code Annotated governed the Igroses' quarantine as opposed to section 10104.

ORIGINAL

As an initial matter, the Court first reiterates that DPHSS did not produce the voluntary quarantine form that it claims the Igroses allegedly signed and which it claims to rely upon in satisfying section 10104. If DPHSS wished to bind the Igroses to a voluntary quarantine, it had an obligation to follow the regulatory procedures under 26 GAR § 10105 ("Procedure for Voluntary Isolation or Quarantine"). At the very least, it had an obligation to produce at the hearing the voluntary quarantine form which may cover the conditions with which the Igroses agreed to abide. Instead, there is no voluntary quarantine form in evidence, as well as no evidence as to what conditions the Igroses agreed to, whether they agreed to a certain duration, whether there were opportunities to seek testing, or whether the Igroses were allowed to seek the assistance of legal counsel. DPHSS simply failed to meet the burden of proving what voluntary quarantine meant in this instance.

Setting aside the deficiencies in DPHSS' evidence, the evidence presented overwhelmingly supports that DPHSS instituted a mandatory quarantine of incoming passengers at the time the Igroses arrived on Guam. In reaching this determination, the Court returns to the governing Executive Orders, DPHSS Guidance Memo 2020-11 Rev7 ("Rev7"), and the testimonies of Chima Mbakwem (Containment and Infection Control Branch Lead for DPHSS) and Eugene Igros.

First, regarding the Executive Orders, since the quarantine procedures have altered since the Court issued its FFCL, a brief review of the quarantine measures taken at and around the time the Igroses arrived in Guam is helpful. On August 14, 2020, Governor Lourdes Leon Guerrero issued Executive Order No. ("EO") 2020-27, which, effective August 16, 2020, reverted Guam to pandemic condition of readiness 1 ("PCOR 1"). On August 21, 2020,



Governor Leon Guerrero issued EO 2020-28, in which she stated that it was necessary to restrict entry into Guam. EO 2020-28 at 2-3. She ordered:

> RESTRICTING ENTRY INTO GUAM. Pursuant to Section 3333, Article 3, Chapter 3, Title 10, Guam Code Annotated, all persons entering Guam *shall be subject to quarantine pursuant to this Section and Sections 19604 and 19605* of Article 6, Chapter 19, Title 10, Guam Code Annotated. Such quarantine will be administered in accordance with applicable DPHSS Guidance and *shall occur in a government qualified facility.*

EO 2020-28 at 4-5 (emphases added). As plainly stated, Governor Leon Guerrero directed the quarantine to occur in compliance with 10 GCA §§ 19604 and 19605. Those are the same provisions the Court examined in its FFCL when it determined whether DPHSS followed Guam law in quarantining the Igroses.

Several days later, on August 27, Governor Leon Guerrero expanded on the conditions of quarantine. Under EO 2020-29, persons subject to quarantine were ordered not to go beyond the confines of the quarantine premises or else face a misdemeanor. EO 2020-29 at 5. Moreover, the Guam Police Department was ordered to assist in the strict enforcement of quarantine. EO 2020-29 at 5. Respondent offers no argument in regards to the Court's plain reading of the mandatory nature of the order or the specific citations to statutory authority.

Second, the "applicable DPHSS Guidance" referenced in EO 2020-28, that is, Rev7, reemphasized the mandatory nature of the quarantine.[1] For instance, it reads that "all persons entering Guam shall be subject to quarantine in accordance with the Department of Public Health and Social Services guidance." Rev7 at 1. Furthermore, "Arriving passengers (air or sea) are subject to a 14-day quarantine period at a Government of Guam Quarantine Facility, regardless of test results." Rev7 at 2. Lastly, DPHSS underscored that "Compliance with voluntary quarantine regardless of location is subject to monitoring, verification, and enforcement. **The**

---

[1] The Court notes here, as it did in FCCL, that although Rev7 had not yet gone into effect when the Igroses arrived, its underlying principles were applied. Rev7 was admitted at the hearing as Exhibit B.



**knowing and intentional failure to follow any part of this order constitutes a misdemeanor punishable by a fine of not more than $1,000 or imprisonment of not more than one year or both . . . ."** Rev7 at 2 (emphasis in original).

Third, though the Court did not explicitly reference Mbakwem's testimony in its analysis concerning voluntary quarantine, upon further review of that testimony, it appears that DPHSS agreed the quarantine was mandatory. Mbakwem testified regarding the departure from the prior policy[2] which permitted home quarantine or an early transfer out of government-facility quarantine based on the place of origin and the presence of a pre-travel negative test. DPHSS changed that policy for several reasons. For example, the island experienced an increase in local travel-related positive cases in July and August, which followed an increase in positive cases in the mainland from where most travelers originated. Also, because passengers could be exposed during travel, the pre-travel test did not suffice to ensure the person was free of COVID-19. In fact, some persons tested positive during their stay in government quarantine. Finally, the specific imposition of a term of 14 days was necessary to cut off any transmission of the virus to the local community. Based on these reasons, DPHSS decided that they had to quarantine all incoming passengers regardless of test results in order to monitor their symptoms.

Mbakwem's Declaration further explains how the Igroses had no option:

- "Petitioners were determined to either have been exposed or may have been exposed to a contagious disease." Decl. Chima Mbakwem ¶ 4 (Sept. 11, 2020).

- "Under the authority of EO 2020-29 and Rev7, Petitioners were placed in quarantine at the Government Quarantine Facility . . . ." Decl. Chima Mbakwem ¶ 4.

- "Quarantine of Petitioners at a designated Government Quarantine Facility is the least restrictive means necessary to prevent the spread of

---

[2]*See* DPHSS Guidance Memo 2020-11 Rev6 available at https://dphss.guam.gov/wp-content/uploads/2020/08/1-DPHSS-GUIDANCE-MEMO-2020-11-REV6-COVID-19-08.05.2020-003.pdf. The Court and Respondents reviewed Rev6 at length in a prior quarantine proceeding, *Shawl v. DPHSS*, SP0123-20 (Super. Ct. Guam Aug. 28, 2020).



SARS-CoV-2/COVID-19 to others in the community." Decl. Chima Mbakwem ¶ 12(a).

Finally, consistent with preceding evidence, Eugene Igros testified that he in fact felt forced to sign the voluntary quarantine papers.[3] As this Court has earlier remarked, no copy of the Igroses' voluntary forms was submitted for review for the Court to make any determination as to whether DPHSS complied with any procedures governing voluntary quarantine. *See* 26 GAR § 10105.

In summary, while the Court continues to hold that voluntary quarantine is allowed under the Regulations, under the atmosphere in which EO 2020-28 mandated quarantine for all passengers, the confirmation of mandatory compliance with quarantine DPHSS imposed through Rev7, and the position that DPHSS took concerning the need to be place the Igroses into government quarantine, in no way can the Igroses be considered to have had a choice in whether or not to volunteer their consent to a government quarantine. The Court correctly concluded that the quarantine was not voluntary.

Additionally, the Court is not persuaded by Respondents' reliance on section 10104. DPHSS asks the Court to enforce its reliance upon the Igroses' execution of a voluntary quarantine form as valid under section 10104. While that provision does state that "voluntary isolation should always be used as a first option," it then qualifies that language as follows:

> Voluntary Isolation should always be used as a first option *unless* the DPHSS Director under the medical advice of the Chief Medical Officer has:

---

[3] In the weeks following the Igros' hearing, numerous persons testified before this Court about how they were compelled to sign voluntary quarantine forms. *See Cruz v. DPHSS*, SP0129-20 (Dec. and Order at 2-3 (Sept. 24, 2020)) (Janella Cruz testified that DPHSS told her she had to submit to quarantine with her children); *Pang v. DPHSS*, SP0137-20 (Dec. and Order at 2 (Sept. 24, 2020)) (Christina Pang attempted to quarantine at home but was told she would have to quarantine at the government facility); *Martinez v. DPHSS*, SP0132-20 (Dec. and Order at 2 (Oct. 6, 2020)) (Odessa Martinez attempted to quarantine at home but DPHSS crossed out his home address on the voluntary quarantine forms; Odessa Martinez testified that she was told she did not have a choice but to quarantine at the government facility); *Ikei v. DPHSS*, SP0138-20 (Test. Chad Ikei, Sept. 28, 2020) (Chad Ikei was advised he had to be under quarantine).



(1) determined in his or her professional judgment that seeking voluntary compliance would create a risk of serious harm; and

(2) determined that there is a reason to believe that the person or persons is/are, or is/are suspected to be, infected with, exposed to or contaminated with a communicable disease or chemical, biological, or radiological agent that could spread to or contaminate others if remedial action is not taken; and

(3) determined that there is a reason to believe that the person or persons would pose a serious and imminent risk to the health and safety of others if not detained for purposes of isolation and quarantine; and

(4) determined that there is a satisfactory medical evidence providing reason to believe that although the person or persons does not demonstrate or show symptoms of a communicable disease which is identified and declared by the U.S. Center for Disease Control and Prevention (CDC) to be critically dangerous to public health and safety, and ongoing CDC mandates, directives, instructions and protocol criteria are being implemented in a national effort to combat the spread of the communicable disease, and that, due to significant exposure to the communicable disease, the person or persons shall nonetheless be deemed to pose a serious and imminent risk to the health and safety of others if not detained for purposes of isolation and quarantine for the known incubation period, as determined by the CDC.

26 GAR § 10104(a) (emphasis added). In other words, voluntary quarantine may be used if the subsequent four factors are not met.

Rev7, together with Mbakwem's testimony, however, indicated that all of those factors are met. In regards to the first factor, Mbakwem indicated that the Igroses posed a risk of serious harm because they were determined to have been exposed or potentially exposed to COVID-19. Decl. Chima Mbakwem ¶ 4. They were therefore placed in government quarantine. Decl. Chima Mbakwem ¶ 4. The Court also takes note of Mbakwem's testimony offered just days after the Court issued its FFCL in which he acknowledged that the quarantine was mandatory. SP0129-20 (Test. Chima Mbakwem, Sep. 18, 2020).

Regarding the second, third, and fourth factors, Mbakwem testified that all persons coming into Guam could be exposed, regardless of obtaining a negative test result days before; as a result, DPHSS returned to a mandatory 14-day quarantine in a government facility after



months of reduced quarantine restrictions. He further testified that the reason DPHSS stopped accepting pre-travel negative test results from travelers seeking exemption from quarantine is that a person could contract COVID-19 while en route but remain asymptomatic. Accordingly, the test would not accurately reflect that person's health upon arrival. For that reason, according to Mbakwem, travelers could be suspected of having COVID-19 and could contaminate others if remedial actions were not taken. This testimony supports that DPHSS believed that arriving travelers were suspected to be exposed to or infected, even if asymptomatic, and the risk of spreading COVID warranted a 14-day government facility quarantine.

Finally, as required under section 10104 when resorting to involuntary quarantine, DPHSS must have the endorsement of its Director under the advice of the Chief Medical Officer. In this case, DPHSS fully endorsed a mandatory quarantine, first evidenced by DPHSS' Director's signature on Rev7. Rev7 at 11. Furthermore, Mbakwem later testified that DPHSS' Chief Medical Officer determined that the quarantine of passengers was mandatory and an emergency. SP0129-20 (Test. Chima Mbakwem, Sep. 18, 2020).

Despite having opportunities to address these four factors in the presentation of its case or its Motion for Reconsideration, DPHSS has failed to do so. Instead, DPHSS wants the Court to accept voluntary quarantine as a first option on its face without further examination or further proof as to the scope of the Igroses' consent. On the contrary, the record before the Court demands a deeper analysis. The Court rejects DPHSS' request to bind the Igroses to an unexamined and unbriefed regulation and an unsubmitted voluntary quarantine form. The facts support the Court's FFCL that when the Igroses entered a government quarantine facility, they did not do so voluntarily.



**C. Whether the case law supports consent to voluntary quarantine regardless of section 3309 and 10 GAR § 10104.**

Respondents also argue that Guam case law supports their reliance on acquiring voluntary consent to restrictions on liberty interests for reasons of quarantine in place of adhering to the procedural requirements of section 19605. Specifically, Respondents cite three criminal cases that carve out certain instances where a person may voluntarily consent to a warrantless search or seizure: *People v. Santos*, 1999 Guam 1 and *People v. Chargualaf*, 2001 Guam 1 address voluntary consent to a warrantless search; and *People v. Taman*, 2013 Guam 22 addresses voluntary consent to continued detention beyond the 15-minute limit prescribed by 8 GCA § 30.30 of Guam's Stop and Frisk Act. While the Court agrees that, in certain instances, voluntary consent has been held as an exception to the warrant requirement, the proper analysis regarding voluntary consent to voluntary quarantine is not found in criminal law.

Whether or not voluntary consent is an adequate excuse for depriving someone of a constitutional right must be analyzed in light of the particular right at issue. The cases cited by Respondents address the 4th Amendment right to be free from unreasonable search and seizure; conversely, the restrictions on liberty imposed by government quarantine are a form of civil commitment. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause," *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992), and "[i]t is clear that 'commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection,'" *Jones v. United States*, 463 U.S. 354, 361 (1983) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)). Accordingly, when the government imposes a quarantine, the due process principles under the 14th Amendment form the proper analytic framework.[4] The

---

[4] Section 19605 is, in essence, construed to comply with Due Process requirements, and at least within this litigation, its due process protections have not been challenged.

Court therefore rejects Respondents' analogies to criminal law and 4th Amendment jurisprudence.

### D. The Court's March and April quarantine orders are distinguishable.

Finally, Respondents argue that the Court's FFCL represents a reversal of the Court's approval of voluntary consents obtained from travelers in March and April 2020. SP0049-20 and SP0051-20. This argument bordes on bad faith. In the earlier cases, DPHSS represented that the quarantine at its inception was *involuntary*. SP0049-20 (Decl. Linda Denorcey, ¶¶ 3-4, Mar. 27, 2020; Petrs.' Supp. Documents, Ex. 3, Mar. 31, 2020 (DPHSS directive furnished to passengers states that "I also believe that seeking voluntary compliance creates a serious risk of harm"). According to the petition in SP0049-20, "the Director issued an Emergency Involuntary Detention Order at . . . the time and date at which the quarantine commenced." SP0049-20 (Pet. ¶ 10, Mar. 27, 2020). Back then, DPHSS agreed to follow the procedures under Title 10, Chapter 19, of the Guam Code Annotated; it did not utilize the voluntary quarantine procedures under section 10104.

Moreover, prior to stipulating to their continued quarantine, the quarantined individuals received more information that the Igroses did. DPHSS had provided the March and April passengers with a directive upon their entry into quarantine. The directive advised the passengers that they had the right to counsel and how they could object to quarantine. SP0049-20 (Petrs.' Supp. Documents, Ex. 3). Then when DPHSS filed section 19605(b) petitions seeking to extend the quarantine beyond 10 days, DPHSS provided a copy of the directive to the Court. After first being advised of their rights and then having the benefit of court-appointed counsel, the passengers then agreed to a continued quarantine.

The informed nature surrounding the March and April Philippine passengers is wholly incomparable to the Igroses' situation. The Igroses did not receive a directive or a copy of the quarantine laws, and they did not have the benefit of either the advice of counsel or the knowledge of their right to counsel. It is DPHSS--and not the Court--that has changed its approach with respect to quarantine.

## III.    CONCLUSION

Having failed to demonstrate that the Court committed clear error, the Court DENIES Respondents' Motion for Reconsideration.

SO ORDERED this 15th day of October 2020.

_____
HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

Appearing Attorneys:
Rachel Taimanao-Ayuyu, Esq., for Petitioners Eugene Igros, Amy Igros, E.N.I. and E.T.I.
Deputy Attorney General James L. Canto, II, Esq., Office of the Attorney General, for the
        Department of Public Health and Social Services
Assistant Public Defender John Morrison, Esq., appointed pursuant to the September 25, 2020
        General Order

